# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

IN RE: Syntax-Brillian Corporation, et al.

| | | |
|---|---|---|
| Ahmed Amr, | : | |
| | : | |
| Appellant, | : | C.A. No. 13-337-GMS |
| | : | |
| v. | : | |
| | : | |
| Greenberg Traurig LLC, et al., | : | Bankruptcy Case No. 08-11407 |
| | : | |
| Appellee | : | AP No. 13-14 |

## MOTION OF APPELLANT TO DISMISS THE MOTION OF APPELLEES GREENBERG TRAURIG, LLP AND NANCY A. MITCHELL TO DISMISS APPEAL

AHMED AMR
PRO SE
626 MAIN STREET
EDMONDS, WA 98020
TELEPHONE: 425-672-1307
Dated: March 25, 2013



RECEIVED

MAR 2 9 2013

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Ahmed Amr (the "Appellant"), acting as pro se, hereby moves this Court for an order dismissing the Motion of Appellees Greenberg Traurig, LLP and Nancy A. Mitchell to dismiss the appeal ("The Dismissal Motion"). In filing "The Dismissal Motion", the Appellees Greenberg Traurig, LLP and Nancy A. Mitchell (the "Appellees") make the unsubstantiated claim that the Notice of Appeal was untimely and that the Federal District Court – District of Delaware (the "Federal District Court") does not have the jurisdiction to hear the Appellant's Appeal. For the following reasons, the Appellant states that a) the Notice of Appeal was timely and b) that the Federal District Court has jurisdiction to hear this Appellant's Appeal and c) that the Appellee's Dismissal Motion has no merit and is a transparent attempt deny the Appellant a day in Court. This Motion is limited in scope to the threshold jurisdictional issue of whether the Appellant filed a timely Notice of Appeal. In support of the Motion to dismiss the Dismissal Motion, Appellant states as follows.

## PRELIMINARY STATEMENT

1. On July 8, 2008, (the "Petition Date"), Syntax-Brillian (the "Debtors") filed petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court.")

2. Prior to filing the Bankruptcy Petition, Greenburg Traurig had represented Syntax-Brillian

since the founding of the company. Until a few weeks prior to the filing, Greenberg Traurig had acted as counsel for James Li and other Syntax-Brillian officers and directors in pre-petition class action suits filed by shareholders. (see Exhibit A, Docket No. 17).

1

3. Three years after the Debtors filed their bankruptcy petition, the United States Securities and Exchange Commission bankruptcy the United States Securities filed a complaint against a number of Debtors' officers and directors including James Li (AKA Ching Hua Li) and Thomas Chow (AKA Man Kit Chow). See U.S. District Court – District of Arizona (Pheonix Division) Civil Docket for Case #: 2:11-cv-0712-SRB. ("The SEC Complaint")

4. The Appellant has filed a copy of the SEC Complaint with the Bankruptcy Court. " (see Exhibit B, Docket 1967). The SEC Complaint was the trigger that gave the Appellant the evidence he needed to file a motion to sanction Nancy Mitchell and Greenberg Traurig.

5.   The SEC complaint detailed the extent of the egregious fraud perpetrated by senior management and members of the Board of Directors of Syntax-Brillian. The egregious fraud included "reporting significant sales of LCD televisions in China, when in fact the vast majority of these sales never occurred. Syntax's purported customer for these fictitious sales was South China House of Technology Consultants Co. Ltd ("SCHOT"). Li and Chow initially concealed the scheme through the use of fake shipping and sales documents." (see page 2, Exhibit B, Docket 1967).

6. The SEC complaint revealed that "Reported sales from Syntax to SCHOT during fiscal year 2007 amounted to $336 million in revenue, which was equal to 48.1% of Syntax's total revenue and a 934% over reported fiscal year 2006 sales to SCHOT. A majority of these sales, however, were total shams documented by fictitious purchase orders, invoices and the bills of lading. Indeed, the shipping vessels indicated on the bills of lading were not even in use on the

2

shipping dates identified. In other instances, the shipping vessels were on different routes on the dates in which they were purportedly carrying LCD televisions and or/parts." (see page 5-6, Exhibit B, Docket 1967).

7. The SEC complaint revealed that "In December 2006, Li, Chow and Kao caused Syntax to make payments to Kolin for so-called "tooling invoices." Between December and August 2007, Li and Chow directed, and Liu and Kao authorized, the funneling of additional funds under the auspices of additional tooling invoices totaling $120 million. Most, if not all, of these tooling invoices were fabricated by a Syntax employee at Li's direction." (page 11, Exhibit B, Docket 1967).

8. During the course of the Bankruptcy Court proceedings, Nancy Mitchell engaged in lack of candor before the court. While Syntax-Brillian was a scheme to defraud investors of hundreds of millions of dollars, Nancy Mitchell stated in court hearings that the "business was a good business." (See Exhibit I, Docket No. 1967).

9. During the course of the Bankruptcy Court proceedings, Nancy Mitchell and GT continued to misrepresent the debtors as a legitimate company that had liquidity problems resulting from legitimate business reasons such as cost of goods, competition and lack of ownership of technology.

10. In Court filings and testimony before the Bankruptcy Court, Nancy Mitchell and GT also misrepresented the Debtors as a company that was legitimate enough to be reorganized. (See Exhibit I, Docket No. 1967). They lined up a buyer for the alleged assets of the company, which

3

included approximately $30 million in phantom inventory and $60 million dollars in accounts receivables from SCHOT and Olivia Far East, a dummy corporation in Hong Kong. The buyer lined up by Greenberg Traurig, TCV, turned out to be a Taiwanese company that had intricate business relationships with Syntax-Brillian and had actively traded in Syntax-Brillian securities. That and many other facts were reported to the Court by the Appellant. When the buyer realized an examiner would be appointed by the Court, they ran out on a deal.

10. On 3/18/2009, the Appellant filed an "emergency motion to dismiss the Syntax-Brillian Chapter 11 bankruptcy petition (case 08-11407) on the grounds that the petition was filed to cover up fraud, embezzlement, illegal conveyance of corporate property, illegal trading and security law violations and on the grounds that it was filed on the authority of a board of directors that participated in one or more of the above listed transgressions that plagued the company from the day it was incorporated to the day it filed the bankruptcy petition and on the grounds that the current interim-management and their counsel was appointed by that same board of directors and that current interim-management and their counsel committed perjury to navigate this criminal enterprise through the bankruptcy courts with an expedited filing for the exclusive benefit of Silver Point Finance and the current and former officers and executives

of Syntax-Brillian." The motion was filed on 3/18/2009 as the "Emergency Motion to Dismiss the Case filed by Ahmed Amr." ("Emergency Motion to Dismiss the Chapter 11 case"). (Docket 1046).

4

11. In support of the Appellant's Emergency Motion to Dismiss the Chapter 11 Case, the Appellant sought discovery and asked for the release of the Board of Director minutes and other documents.

12. A hearing for Appellant's Emergency Motion to Dismiss the Chapter 11 Case was held on 4/21/2009. During the course of the hearing, the Appellant asked Gregory Rayburn, the interim CEO of Syntax-Brillian, if the Board of Director minutes that were subject to discovery were complete. As it turned out, they were not. The Appellees, as counsel for the debtors, took full responsibility for the failure to deliver the Board of Director minutes because, as certified by Nancy Mitchell, the Board of Director minutes were in the custody of Greenberg Traurig. The Appellees delivered some thirty pages of missing Board of Director minutes during the course of the hearing. The Bankruptcy Court gave the Appellant all of fifteen minutes to review "The Second Installment of the Board of Director Minutes."

13. After the hearing, the Appellant was certain that, even with the Second Installment of Board of Director, the Appellees were still withholding Board of Director minutes. The Appellant proved correct. Weeks after the Bankruptcy Court denied Appellant's Motion to Dismiss the Chapter 11 Case, the Appellees produced an additional eight missing minutes "The third installment of Board of the Board of Director Minutes". The Appellant is convinced that there are additional Board of Director Minutes that have not been released by the Appellees.

14. The third installment of the Board of Director Minutes revealed that Nancy Mitchell had made misrepresentations to the Bankruptcy Court and the Appellant regarding a so-called

5

'independent' debt committee of the Board of Directors that had allegedly taken over the management of the company pre-petition.     As it turned out, one of these so-called 'independent' directors was Vincent Sollitto, the CEO of Syntax-Brillian from its founding to 9/30/2007. Vincent Sollitto was also the Chairman of the Board of Directors until the filing of the Bankruptcy and had approved the Chapter 11 filing.

15. The appeal that is before the court is from a memorandum order on the Appellant's motion to sanction Nancy Mitchell and Greenberg Traurig for failure to produce discovery in a timely fashion and lack of candor before the tribunal. The Appellees managed to get the plan approved by resorting to withholding discovery and lack of candor before the tribunal.

16. After the plan was passed, over the course of the last four years, information started trickling in proving the extent of the egregious pre-petition fraud that had plagued Syntax-Brillian culminating with a complaint by the SEC against James Li and Thomas Chow.

17. There is a wide discrepancy between the Syntax-Brillian that was portrayed in the SEC Complaint and the Syntax-Brillian portrayed by Nancy Mitchell as a "good business" that could be reorganized as a going concern.

18. The Bankruptcy Court has acknowledged the massive pre-petition fraud and has also stated that it would have converted the Chapter 11 to a Chapter 7 had it known what it knows today. Even so, the Bankruptcy Court has taken the position that only the Liquidation Trustee has the standing to file for sanctions against Nancy Mitchell and Greenberg Traurig for lack of candor

6

before the Court and for the failure to deliver discovery to the Appellant.

19. The Appellant was instrumental in uncovering the fraud that plagued Syntax-Brillian and has been active in the Bankruptcy Court proceedings and has also been active in supplying information to the Securities and Exchange Commission. Nancy Mitchell and GT failed to provide timely discovery to Appellant before the critical hearing of the Appellant's motion to dismiss the Syntax-Brillian Chapter 11 as an abusive petition to cover up securities fraud.

20. There were a number of irregularities in how the Appellants sanction's motion was administered by the Bankruptcy Court that are stated in the Statement of Issues on Appeal that the Appellant has filed as part of the Designation of Record. All these issues should be decided by the District Court on their own merits.

21. Again, this motion is limited in scope to the threshold jurisdictional issues that the Appellees raised in the Dismissal Motion. The Preliminary Statement is only to give the District Court a general sense of Syntax-Brillian, a Chinese Reverse Merger scheme that swindled investors of hundreds of millions of dollars. The Preliminary Statement should also serve to give the District Court a glimpse of the Appellee's lack of candor before the Court and failure to deliver

discovery in a timely fashion.

22. As the case proceeds through the appeals process, the Appellant intends to file a full comprehensive brief further detailing the merits of his case for sanctioning the Appellees for lack of candor before the tribunal and failure to timely deliver discoveries to the Appellant.

7

## The Notice of Appeal was delivered to the Bankruptcy Court Clerk on 1/28/2013

23. The Appellees contend that the last day to timely file a Notice of Appeal of the Reconsideration Denial Order was January 28, 2013. That date is disputed by the Appellant. Even so, the evidence is that the Appellant's Notice of Appeal was delivered to the Bankruptcy Court Clerk on 1/28/2013 (see Exhibit A).

24. The Appellant mailed the Notice of Appeal on January 25, 2013 by priority mail to the Clerk of the Bankruptcy Court. The tracking number for the priority mail is (0312 2120 0000 6599 4749). (see Exhibit A).

25. The Appellant tracked the mailed Notice of Appeal to make sure that it was delivered to the Clerk of the Bankruptcy Court by January 28, 2013.

26. The Appellant printed out the delivery information using the Track and Confirm facility available on USPS.com, the United States Postal Service online website. A copy of the USPS tracking report is attached    (see "Exhibit A"). The Track and Confirm facility available on USPS.com is accessible by any party of interest. In fact, it is available to anybody who has internet access and the Appellees could have very easily made use of it before filing this unwarranted Dismissal Motion.

27. Exhibit A clearly demonstrates that the Priority Mail item was delivered to the Clerk of the Bankruptcy Court at 11:42 am on January 28, 2013.

28. The Appellant filed a timely Notice of Appeal by delivering the Notice of Appeal to the Clerk of the Bankruptcy Court on January 28, 2013.

8

## The deadline for filing a Notice of Appeal was 1/30/2013

29. The Appellees contend that the deadline for filing a Notice of Appeal was 1/28/2013. The actual deadline for filing a Notice of Appeal was 1/30/2013.    Contrary to the Appellees' unsubstantiated assertions, the Appellant filed the Notice of Appeal two days prior to the filing deadline.

30. The Appellees contends that Appellant's Fourth Motion to Alter or Amend the Reconsideration Denial (the "Fourth Motion to Alter or Amend") was untimely because it was filed on January 15, 2013, twenty-five days after the deadline to do so.

31. Altogether, the Appellant filed four motions to Alter or Amend. The Appellant's Fourth Motion to Alter or Amend was mailed via priority mail on January 12, 2013.  The tracking number for the priority mail is (0312 2120 0000 6607 6185) (see "Exhibit B").

32. The Appellant printed out the delivery information using the Track and Confirm facility available on USPS.com, the United States Postal Service online website.  A copy of the USPS tracking report is attached   (see "exhibit B").

33. Exhibit B proves that the Fourth Motion to Alter and Amend was delivered to the Clerk of the Bankruptcy Court on January 14, 2013. A copy of the USPS tracking report is attached   (see "exhibit B").  The Fourth Motion to Alter and Amend was filed one day after it was delivered to the Bankruptcy Court Clerk on January 15, 2013.

9

34. On January 14, 2013, the Bankruptcy Court entered an order denying the First, Second and Third Motions to Alter or Amend (Docket No. 2114) ("the First Amendment Denial Order").

35. The Appellant had no advance notice that the Bankruptcy Court would enter the order on January 14, 2013, well before a hearing on the motions to amend. The Appellant had expected to argue all four motions to Alter and Amend the Reconsideration Denial Order at the scheduled Omnibus hearing on 2/5/2013.

36. Due to the complexity of the proceedings, the Appellant had notified the Bankruptcy Court that he reserved the right to file a number of motions to Alter and Amend the Reconsideration Denial Order up to the hearing date.

37. It is clear from the record that the Bankruptcy Court entered the First Amendment Denial Order on the same day the Clerk of the Bankruptcy Court received the Fourth Motion to Alter or Amend. There is no way of knowing the exact time of day that the First Amendment Order was filed. There is no time stamp on the order. The Fourth Motion to Alter and Amend could

very well have been received by the Clerk of the Bankruptcy Court before the Court entered the First Amendment Denial Order. In any case, the Bankruptcy Court did not dispute the timeliness of the Fourth Amendment Denial Order or its Jurisdiction to rule on it as a motion to alter and amend.

10

## The Bankruptcy Court did not dispute its Jurisdiction to hear the Fourth Motion to Alter or

### Amend

38. On January 16, 2013, the Bankruptcy Court entered an order denying the Fourth Motion to Alter or Amend (Docket No. 2119) ( the "Second Amendment Denial Order").

39. The Second Amendment Denial Order is a final order and is not subject to appeal or amendment.

40. In the Appellant's Fourth Motion to Alter and Amend, the Appellant asserted that "the Court has jurisdiction to hear a motion to amend the Memorandum Order."

41. In the Second Amendment Denial Order, the Bankruptcy Court did not dispute its jurisdiction to hear and rule on the Fourth Motion to Alter or Amend.

42. The Appellee's contention that Appellant's Fourth Motion to Alter and Amend was untimely has no merit. The issue of whether a motion is timely or untimely is an issue that comes under the banner of Jurisdiction.

43. Although the Fourth Motion to Alter and Amend was denied by the Bankruptcy Court, it was not denied on the grounds of lack of Jurisdiction. In fact, in issuing the Second Amendment Denial Order denying the Fourth Motion to Alter and Amend for reasons other than Jurisdiction, the Bankruptcy Court affirmed that it had Jurisdiction to hear the Fourth Motion to Alter and Amend.

11

44. The Appellee did not file any objection to the Fourth Motion to Alter or Amend (Docket 2117). The deadline for filing any objection to the Fourth Motion to Alter or Amend was January 31, 2013.

45. If the Appellees had any grounds to object to a) the timeliness of the Appellant's Fourth Motion to Alter or Amend or b) the Jurisdiction of the Bankruptcy Court to hear the Appellant's Fourth Motion to Alter or Amend, the Appellees had 14 days to file an objection challenging the Jurisdiction of the Bankruptcy Court. That deadline has passed, and the Second Amendment Denial Order is now final and not subject to appeal or denial.

46. Whether Fourth Motion to Alter or Amend is timely or untimely is a matter of jurisdiction. If the Appellee had any cause to object to Alter and Amend on the basis of Jurisdiction, they failed to do so in a timely fashion.

47. The Appellees also had another opportunity to raise any issue related to the Jurisdiction of the Bankruptcy Court to hear the Fourth Motion to Alter and Amend. The Appellees had the opportunity to file motion to amend the "Second Amendment Denial Order" to reflect any objection regarding whether the Fourth Motion to Alter and Amend was timely or whether the Bankruptcy Court had Jurisdiction to hear the Fourth Motion to Alter and Amend. The deadline for filing a motion to amend the Fourth Motion to Alter and Amend was January 30, 2013.

Appellees failed to file a timely motion to amend the Second Amendment Denial Order.

12

48. The Fourth Motion to Alter and Amend must therefore be considered as a timely filed motion to amend the Reconsideration Denial Order. The "Second Amendment Denial Order") was filed on 1/16/2013 and, therefore, the deadline for filing a Notice of Appeal is 1/30/2013.

Appellant's Notice of Appeal was delivered to the Clerk of the Bankruptcy Court on 1/28/2013 and therefore was timely. The Federal District Court clearly has Jurisdiction to hear the Appeal.

### The Bankruptcy Court Accepted that the Fourth Motion to Alter or Amend was

### Nothing more or less than the other three motions to Alter or Amend

49. The Bankruptcy Court also did not contest that the Fourth Motion to Alter and Amend was anything other than a motion to alter and amend. In the Second Amendment Denial Order, the denial was for "the reasons stated in this Court's January 14, 2013 Order denying the first three motions to alter and amend." So, the Bankruptcy Court clearly acknowledged that the Fourth Motion to Alter and Amend was on a par with the "first three motions to Alter and Amend."

50. This Jurisdiction specifically instructs Appellants to await a final order on *all motions* to amend before filing a Notice to Appeal. The Second Amendment Denial Order was the final order Appellant's four motions to amend. The Second Amendment Denial Order was filed on 1/16/2013 and, therefore, the deadline for filing a Notice of Appeal was 1/30/2013. Appellant's Notice of Appeal was delivered by to the Clerk of the Bankruptcy Court on 1/28/2013 and therefore was timely. The Federal District Court clearly has Jurisdiction to hear the Appeal.

13

## Local Rules and Practice in this Jurisdiction

51. Appellant has been informed by the Clerk of the Federal District Court that, in this jurisdiction, the Local Rules extend filing dates by three days, even for pleadings that are filed electronically. Appellant was further informed by the Clerk of the Federal District Court that the electronic system is programmed to add the three days.

52. The Second Amendment Denial Order was filed on 1/16/2013. If we consider the Local Rules and Practice in this Jurisdiction, the deadline for filing a Notice of Appeal was 2/2/2013.

Appellant's Notice of Appeal was delivered by to the Clerk of the Bankruptcy Court on 1/28/2013 and therefore was timely. The Federal District Court clearly has Jurisdiction to hear the Appeal.

## ARGUMENT

53. The Appellant is not contesting the Appellees' contention that Bankruptcy Rule 8002 governs the timing for filing an appeal from a judgment of a bankruptcy court to a district court. The Appellant agrees that Bankruptcy Rule 8002 provides that a "notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from."

54. The Appellant has included in this motion evidence from the United States Postal Service confirming that he filed a timely Notice of Appeal by delivering the Notice of Appeal to the Clerk of the Bankruptcy Court on January 28, 2013. The Notice of Appeal was timely and the Federal District Court has jurisdiction to hear the Appeal.

55. The Appellant is also not contesting the Appellees' contention that "if any party makes a timely motion to alter or amend the judgment pursuant to Bankruptcy Rule 9023, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding." The last such motion outstanding was Fourth Motion to Alter and Amend. The "Second Amendment Denial Order") was filed on 1/16/2013 and, therefore, the deadline for filing a Notice of Appeal was 1/30/2013.

56. All four motions to alter and amend, including the Fourth Motion to Alter and Amend, were submitted in a timely fashion. The Court did not dispute jurisdiction to hear any of the four motions on the basis of them being untimely. All four motions were scheduled to be heard on the 2/5/2013. While the Bankruptcy Court denied all four motions to alter and amend, the Bankruptcy Court did not distinguish between the four motions and ruled on them as motions to alter and amend.

57. The Appellees had ample opportunity to file a timely appeal of the Second Amendment Denial Order. The Appellees also had ample opportunity to file a timely motion to amend the Second Amendment Denial Order. The Appellees chose to not contest whether the Fourth Motion to Alter and Amend was timely or whether the Bankruptcy Court had jurisdiction to hear the Fourth Motion to Alter and Amend. Whether a motion is considered timely or untimely is a matter of Jurisdiction. The Bankruptcy Court did not contest its Jurisdiction to hear or rule on the Appellant's Fourth Motion to Alter and Amend.

15

58. The Second Amendment Denial Order is a final order and not subject to appeal or amendment. The Second Amendment Denial Order was filed on 1/16/2013 and, therefore, the deadline for filing a Notice of Appeal was 1/30/2013.    The Appellant delivered the Notice of the Appeal to the Clerk of the Bankruptcy Court on 1/28/2013, The Notice of Appeal was timely and the Federal District Court has jurisdiction to hear the Appeal.

59. If we consider the Local Rules and Practice in this Jurisdiction, the deadline for filing a Notice of Appeal was 2/2/2013. Appellant's Notice of Appeal was delivered by to the Clerk of the Bankruptcy Court on 1/28/2013 and therefore was timely. The Federal District Court clearly has Jurisdiction to hear the Appeal.

60. The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). Because Hurst proceeds *prose,* his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[7] *Erickson v. Pardus,* 551 U.S. at 94 (citations omitted).

61. The Appellee's have made no claim that they suffered any prejudice from the Appellant's timely filing of the Notice of Appeal which was delivered to the Clerk of the Bankruptcy Court on 1/28/2013.  In *Riddick*, the First Department affirmed a Supreme Court decision granting summary judgment, even though the motion for summary judgment was untimely filed,

16

because the motion was meritorious and the opposing party did not suffer any prejudice from the late filing. *Riddick*, 4 A.D.3d at 245.

62. In recognition of the abnormally high potential for meritorious pro se complaints to be dismissed, the Supreme Court relaxed pleading standards for pro se litigants to ensure that they receive their "day in court." It does appear that the sole purpose of the Appellee's Dismissal Motion is to deny the Appellant a fair day in court.

## CONCLUSION

The Appellant clearly has met his burden to file a timely Notice of Appeal. This Federal District Court has jurisdiction to hear this Appellant's Appeal. The Appellee's Dismissal Motion has no merit and is a transparent attempt to deny the Appellant a day in Court.

Wherefore, the Appellant moves this Federal District Court to dismiss the MOTION OF APPELLEES GREENBERG TRAURIG, LLP AND NANCY A. MITCHELL TO DISMISS APPEAL.

Respectfully Submitted

Dated: Edmonds, Washington

March 27, 2013

Ahmed Amr, Pro Se

626 Main Street

Edmonds, WA 98020

Telephone: (425) – 672 -1307

17

# Exhibit A

English    Customer    USPS
Service    Mobile

*USPS*

Search USPS.com or Track a Pa

Quick Tools    Mail & Ship    Manage Your Mail    Shop    Business Solutions

# Track & Confirm

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 031229208000050174.18 | Priority Mail® | Delivered | January 28, 2013, 11:42 am | WILMINGTON, DE 19801 | **Expected Delivery By:** January 28, 2013 USPS Tracking / Delivery Confirmation™ |
| | | Out for Delivery | January 28, 2013, 10:36 am | WILMINGTON, DE 19801 | |
| | | Sorting Complete | January 28, 2013, 10:26 am | WILMINGTON, DE 19801 | |
| | | Arrival at Post Office | January 28, 2013, 9:19 am | WILMINGTON, DE 19801 | |
| | | Depart USPS Sort Facility | January 27, 2013 | PHILADELPHIA, PA 19116 | |
| | | Processed through USPS Sort Facility | January 26, 2013, 10:40 pm | PHILADELPHIA, PA 19116 | |
| | | Depart USPS Sort Facility | January 26, 2013 | KENT, WA 98032 | |
| | | Processed at USPS Origin Sort Facility | January 25, 2013, 9:04 pm | KENT, WA 98032 | |
| | | Dispatched to Sort Facility | January 25, 2013, 4:27 pm | EDMONDS, WA 98020 | |
| | | Acceptance | January 25, 2013, 1:15 pm | EDMONDS, WA 98020 | |

## Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy
Terms of Use
FOIA
No FEAR Act EEO Data

**ON USPS.COM**
Government Services
Buy Stamps & Shop
Print a Label with Postage
Customer Service
Site Index

**ON ABOUT.USPS.COM**
About USPS Home
Newsroom
Mail Service Updates
Forms & Publications
Careers

**OTHER USPS SITES**
Business Customer Gateway
Postal Inspectors
Inspector General
Postal Explorer

Copyright© 2013 USPS. All Rights Reserved.

# U.S. Postal Service™ Delivery Confirmation™ Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)



US Bankruptcy Court
844 Market Street
Wilmington DE 19801

**DELIVERY CONFIRMATION NUMBER:**

0312 2120 0000 6599 4749

Postmark
Here

(Please Print Clearly)

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel
(See Reverse)

PS Form 152, May 2002

# Exhibit B



# Track & Confirm

PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 03122120000066076185 | Priority Mail® | Delivered | January 14, 2013, 1:36 pm | WILMINGTON, DE 19801 | **Expected Delivery By:** January 16, 2013 USPS Tracking / Delivery Confirmation™ |
| | | Out for Delivery | January 14, 2013, 11:26 am | WILMINGTON, DE 19801 | |
| | | Sorting Complete | January 14, 2013, 11:16 am | WILMINGTON, DE 19801 | |
| | | Arrival at Post Office | January 14, 2013, 10:35 am | WILMINGTON, DE 19801 | |
| | | Processed through USPS Sort Facility | January 14, 2013, 12:22 am | PHILADELPHIA, PA 19116 | |
| | | Processed at USPS Origin Sort Facility | January 12, 2013, 9:14 pm | KENT, WA 98032 | |
| | | Dispatched to Sort Facility | January 12, 2013, 1:34 pm | EDMONDS, WA 98020 | |
| | | Acceptance | January 12, 2013, 12:33 pm | EDMONDS, WA 98020 | |

**Check on Another Item**

What's your label (or receipt) number?

Find

**LEGAL**                    **ON USPS.COM**                 **ON ABOUT.USPS.COM**        **OTHER USPS SITES**

Privacy Policy ›             Government Services ›           About USPS Home ›            Business Customer Gateway ›
Terms of Use ›              Buy Stamps & Shop ›             Newsroom ›                  Postal Inspectors ›
FOIA ›                      Print a Label with Postage ›     Mail Service Updates ›        Inspector General ›
No FEAR Act EEO Data ›      Customer Service ›              Forms & Publications ›        Postal Explorer ›
                            Site Index ›                    Careers ›

Copyright© 2013 USPS. All Rights Reserved.



**U.S. Postal Service™ Delivery Confirmation™ Receipt**

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

(Please Print Clearly)

Postmark
Here

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access internet web site at
www.usps.com ®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)

☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel
(See Reverse)

DELIVERY CONFIRMATION NUMBER:

9171 9690 0935 0000 7099 5847

PS Form 152, May 2002



**PRIORITY MAIL**

U.S. POSTAGE PAID
EDMONDS, WA
98020
MAR 22 '13
AMOUNT
$5.56
00053532

1006    19801

086
51

USPS THACKING NUMBER

9505 5103 5324 3086 4178 36

# PRIORITY MAIL

**UNITED STATES POSTAL SERVICE**

Flat Rate Mailing Envelope

*Visit us at usps.com*

**INTERNATIONAL RESTRICTIONS APPLY:**

*Customs forms are required. Consult the
International Mail Manual (IMM) at pe.usps.gov
or ask a retail associate for details.*

**\*LEASE PRESS F**

From/Expéditeur:

Akmel Amr
626 Main Street
Unit 1
Edmonds, WA 98020

To/Destinataire:

Clerk of the District Court
United States District Court
District of Delaware
J Caleb Boggs Federal Building
844 N King Street - unit 18
Wilmington, DE 19801-3576

Country of Destination/Pays de destination: