IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                          :
SYNTAX-BRILLIAN CORPORATION., *et al.*,         :    Chapter 11
                                                :    Bankr. Case No. 08-11407 (KJC)
                          Debtors.              :    (Jointly Administered)
                                                :
_____            :
                                                :
AHMED AMR,                                       :
                                                :
                          Appellant,             :    Civ. No. 13-337 (GMS)
                                                :
                    v.                           :
                                                :
GREENBERG TRAURIG LLP, *et al.*,                 :
                                                :
                          Appellees.             :

---

### **MEMORANDUM OPINION**

## I.    INTRODUCTION

Presently before the court is the *pro se* appeal (D.I. 1) of Ahmed Amr ("Appellant"), a

former shareholder of the above-captioned Chapter 11 debtors ("Debtors"), from a Bankruptcy

Court Memorandum Order (B.D.I. 2107)[1] ("Reconsideration Order"), which denied Appellant's

Motion to Reconsider and Vacate Orders (B.D.I. 2001) ("Motion to Reconsider") regarding the

Bankruptcy Court's prior (1) Order Denying Motion to Compel (B.D.I. 1996), and (2) Order

Denying Motion to Sanction Nancy Mitchell and Greenberg Traurig LLP (B.D.I. 1997). The

Reconsideration Order is the only order on appeal, and the parties have completed briefing on the

merits. (*See* D.I. 43, 45, 50.) Since filing the Appeal, however, Appellant and other similarly

aggrieved former shareholders have filed numerous other requests and motions for relief, both

related and unrelated this Appeal (the "Shareholder Motions"). Appellant has filed a purported

---

[1]The bankruptcy docket, captioned *In re Syntax-Brillian Corporation, et al.*, Case No. 08-11407 (KJC) (Bankr. D. Del.), is cited herein as "B.D.I. ___."

Motion for Summary Judgment Affirming Appellant's Standing to Sanction Nancy Mitchell and Greenberg Traurig (D.I. 23); Motion for an Emergency Injunction Directing the Secret Service to Seize and Confiscate Forged Documents Currently in the Custody of the Liquidation Trustee (D.I. 38); and Motion to Impeach Nancy Mitchell's and Greenberg Traurig's Evidence (D.I. 70). Eight former shareholders have filed separate *pro se* Motions to Intervene Due to Bankruptcy Fraud, Spoliation of Evidence and Concealment of Forgery. (D.I. 47, 48, 49, 51, 52, 53, 54, 55.) This Memorandum Opinion addresses the Shareholder Motions. The court's ruling on the merits of the Appeal will be issued separately.

## II. BACKGROUND

The court assumes familiarity with the history of the Debtors' bankruptcy cases. The factual background of this case is set forth in prior opinions by the Bankruptcy Court.[2] The following background is only a summary of the facts relevant to the Shareholder Motions.

### A. The Chapter 11 Cases and Plan

This appeal arises from the Chapter 11 cases of Syntax-Brillian Corporation and its debtor affiliates. Prior to commencing these cases, the Debtors were in the business of selling "Olevia" brand flat screen televisions through retail distribution channels such as Target. The televisions were sourced and assembled in Asia and shipped to the United States. The record reflects that the Debtors were victims of a large scale fraud perpetuated by their pre-bankruptcy management and certain of their vendors or business partners in the Far East. As a result of losses suffered due at

---

[2] *See SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), 2011 WL 3101809 (Bankr. D. Del. July 25, 2011); *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), 2013 WL 153831 (Bankr. D. Del. Jan. 15, 2013), *In re Syntax-Brillian Corp.*, 551 B.R. 156 (Bankr. D. Del. 2016); *see also SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 573 Fed. Appx. 154 (3d Cir. 2014).

least in part to such fraud, the Debtors' business collapsed in the Spring of 2008, and these cases were commenced on July 8, 2008. (*See* B.D.I. 1.)

On August 12, 2008, the Bankruptcy Court entered an order authorizing the Debtors' retention and employment of the law firm of Greenberg Traurig, LLP ("GT") as its bankruptcy counsel. (B.D.I. 236.) The record reflects that Nancy A. Mitchell was one of the GT attorneys that lead the Debtors' representation in the bankruptcy cases. The Debtors tried and failed to sell the business as a going concern in the first few months of the case and promptly shut down operations. On March 12, 2009, the Bankruptcy Court approved the Debtor's Second Amended Disclosure Statement (B.D.I. 1017, 1020) (the "Disclosure Statement"). The Disclosure Statement made fulsome disclosure regarding pre-petition and post-petition investigations and claims of the Debtors against a variety of parties, including prior management and trading partners. The Disclosure Statement also specifically stated that recovery for shareholders was unlikely. (*See* B.D.I. 1017 at 40.)

On July 6, 2009, the Bankruptcy Court entered an order (B.D.I. 1529) (the "Confirmation Order") confirming the Debtors' Second Amended Chapter 11 Liquidation Plan (B.D.I. 1016) (the "Plan"). The effective date of the Plan occurred on July 7, 2009 (the "Effective Date"). (*See* B.D.I. 1533.) On August 6, 2009, GT filed its final application for compensation and reimbursement of expenses as counsel to the Debtors for the period from July 8, 2008 through July 7, 2009 (B.D.I. 1583), which was approved by the Bankruptcy Court on September 10, 2009. (B.D.I. 1608.)

Pursuant to the Plan, on the Effective Date, the Debtors' attorneys were exculpated from "any liability for any post-petition action taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors and/or relating to the Chapter 11

3

Cases" with the exception of acts or omissions determined in "a Final Order to have constituted gross negligence or willful misconduct . . .". (Plan, Article XI.A.) The Plan also authorized the establishment of a liquidating trust (the "Liquidation Trust") and appointment of a liquidation trustee ("Trustee") to, among other duties, hold the Liquidation Trust Assets, pursue certain Causes of Action,[3] and make distributions to beneficiaries consistent with the terms of the Liquidating Trust Agreement. (*See* Plan, Article VI.A.1.) The Debtors' assets, including rights to Causes of Action, were deemed to have been automatically transferred to the Liquidation Trust on the Effective Date. (*See id.*) Finally, Class 7 Equity Interests were cancelled on the Effective Date, and holders of Allowed Equity Interests did not receive any distribution under the Plan. The Plan provided that:

> If prior to the closing of the Chapter 11 Cases the Liquidating Trustee . . . determines that Residual Equity Assets are available for distribution to Holders of Allowed Equity Interests (meaning that additional assets are available after satisfying in full all other pre- and post-Petition Date claims), then, upon reasonable notice to the Holders of Allowed Equity Interests . . . the Liquidating Trustee will file a motion with the Bankruptcy Court requesting approval of procedures for making distributions to the Holders of Allowed Equity Interests . . . The Debtors do not believe that any assets will be available for such distributions.

---

[3] The Plan defines "Causes of Action" as:

> all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, judgments, third-party claims, counterclaims, and crossclaims (including, but not limited to, all claims arising under state, federal or other nonbankruptcy law, and any avoidance, recovery, subordination or other actions against insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise) of the Debtors or any Debtor, the Estates or any Estate (including, but not limited to, those actions described in Article XII hereof) that are or may be pending or existing on the Effective Date, or which are based on any facts or circumstances occurring on or before the Effective Date, against any Person or Entity, based on law or in equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the Effective Date, and including the Unknown Causes of Action, but shall not include any Sale Causes of Action, and shall not include any Causes of Action against [Silver Point Finance, LLC], the DIP Lenders, the Postpetition Agent, the Pre-Petition Lenders, the Pre-Petition Agent and/or their respective affiliates, officers, directors and agents.

Plan, Article I.C.19.

4

(Plan, Article IV.A.7.)  Thus, although the Plan provided that shareholders could potentially receive a distribution on account of their stock holdings in the Debtors, both the Plan and federal law[4] expressly provide that no distributions to shareholders can be made until all allowed claims are paid in full.  Consistent with his duties under the Plan, the Trustee has pursued various Causes of Action, including litigation against former officers and directors of the Debtors.[5]  As of June 3, 2016, the Trustee reported that he has made a 21% distribution to holders of Allowed General Unsecured Claims.  (*See* B.D.I. 2371, ¶ 12.)  The Trustee also reported that he does not anticipate that Allowed Equity Interests will receive a distribution in the Chapter 11 cases.  (*See id.* at ¶ 10.)

## B. Appellant and Former Shareholders

Appellant was a prepetition holder of the Debtors' common stock, and he has actively participated in the Chapter 11 proceedings, making numerous appearances in court and numerous *pro se* requests for relief.  Recognizing the importance of Appellant's input, the Bankruptcy Court has previously awarded Appellant $6,700 pursuant to 11 U.S.C. § 503(b) in recognition of his substantial contribution to the Chapter 11 cases.  Other former shareholders have also made numerous *pro se* filings in the Chapter 11 cases post-confirmation.  (*See* B.D.I. 2393.)

The court is well aware of the losses suffered by shareholders on account of the Debtors' collapse.  The Honorable Brendan L. Shannon, who presided over these cases from July 8, 2008 ("Petition Date") to May 17, 2016,[6] recently recognized the wrongs suffered by the Debtors' former shareholders:

> Syntax was the victim of a fraud, apparently perpetrated by certain members of its management team as well as its suppliers in the Far East.  The Court is acutely aware of the suffering endured by Syntax's shareholders on account of the collapse

---

[4] *See* 11 U.S.C. § 510(b).

[5] *See* B.D.I. 2413 at 5 (referencing adversary proceeding currently pending under the caption, *SB Liquidation Trust v. Li, et al.*, Adv. Proc. No. 08-51830 (KJC) (Bankr. D. Del.)).

[6] On May 17, 2016, The Honorable Judge Kevin J. Carey was assigned to preside over the Chapter 11 cases.  (*See* B.D.I. 2346.)

of the company.  The Court's sympathy, however, does not change the economic reality and legal principles in play.  Under the Plan, there is not presently a return for Syntax's shareholders, and there is not likely to be a return in the future.

Regrettably, shareholders of companies that file for bankruptcy relief often (and perhaps typically) see their investments wiped out.  This is the case even where shareholders purchased their shares in reliance upon fraudulent or misleading information:  Section 510(b) of the Bankruptcy Code specifically provides that claims arising from the purchase or sale of stock in a debtor are subordinated to all other claims.

Consequently, the result in this case is neither unusual nor inconsistent with well-settled legal principles.

*Syntax-Brillian Corp.,* 551 B.R. at 158.  The record also reflects a deluge of post-confirmation filings made by Appellant and other former shareholders, summarized by Judge Shannon:

What is unusual about this case is the amount of time and resources that shareholders have spent pursuing a recovery.  As noted, the Plan was confirmed nearly seven years ago, and the Disclosure Statement accompanying the Plan specifically stated that recovery for shareholders was unlikely.

Certain shareholders continued to persist in post-confirmation litigation, to the point that the Trustee deemed it necessary in 2013 to enter into a confidential cash settlement with these several shareholders.

At the hearing on the matter presently *sub judice,* the Court was distressed to learn that Mr. Ahmed Amr, one of the shareholders who enjoyed a substantial cash payment under the above-described confidential settlement, is actively engaging in or supporting litigation against the Trust.

The bottom line is this: the decision to invest in Syntax turned out to be a bad idea, and the investment was effectively lost in 2008. While deeply unfortunate, this circumstance is neither remarkable nor fixable by this Court.  But it appears that the shareholders' suffering has been compounded by litigants—and specifically Mr. Amr—who have dragged out this process for so many years and kept false hopes alive for a substantial return out of this bankruptcy case.

*Id.* at 158-59 (footnotes omitted).

## C. **The Sanctions Motion and Turnover Motion**

On December 20, 2011, over two years after GT ceased performing in their role as counsel to the Debtors, Appellant filed a motion to sanction GT (B.D.I. 1950) (the "Sanctions Motion")

and a motion to compel the production of certain documents (B.D.I. 1951) (the "Turnover Motion"). Specifically, the Sanctions Motion sought (a) disgorgement of GT's pre- and post-petition fees and expenses related to its alleged fraud on the Court; (b) sanctions for alleged violations of discovery rules relating to GT's alleged failure to turn over board minutes, (c) a compensatory award of $2 million in favor of "*pro se* litigants"; and (d) sanctions for alleged violations of the Federal Rules of Bankruptcy Procedure and the Delaware Lawyers' Rules of Professional Conduct based on GT's alleged fraud on the Bankruptcy Court, including disbarment. (*See* B.D.I. 1950.) The Turnover Motion sought an order compelling the Liquidation Trust and GT to release and/or turn over the "full inventory" of the Debtors' Board of Director meeting minutes. (*See* B.D.I. 1951.)   On January 12, 2012, the Liquidation Trust filed an Objection to these motions. (B.D.I. 1957.)

Before the Bankruptcy Court could rule, more pleadings followed. On January 26, 2012, Appellant filed a Request for Judicial Notice in Support of Motion to Sanction Nancy Mitchell and Greenberg Traurig and in Support of His Objection to Trustee's Settlement Agreement With Greenberg Traurig. (B.D.I. 1967.) GT filed its objection to the Sanctions and Turnover Motions on February 8, 2012. (B.D.I. 1997.)   On February 10, 2012, Appellant filed a Request for Admissions (the "Discovery Requests"). (B.D.I. 1982.)

On February 15, 2012, the Bankruptcy Court conducted a hearing with respect to the Turnover Motion, the Sanctions Motion, and the related objections of the Trust and GT. At the conclusion of the hearing, the Bankruptcy Court took the matters under advisement. Also at the conclusion of the hearing, Appellant handed up a copy of his Response to the Objection of Greenberg Traurig, LLP and Nancy A. Mitchell to the Motion to Compel Release of Documentation, which was docketed on February 21, 2012. (B.D.I. 1988.)

7

### D. **Reconsideration Order and Appeal**

On March 2, 2012, the Bankruptcy Court entered an order denying the Turnover Motion (the "Turnover Order") on the bases that (1) the Bankruptcy Court "had previously ruled on, and denied, [Appellant's] request for the documents or information sought via the [Turnover Motion] on several occasions" and (2) "the purpose of the [Turnover Motion] is "to develop facts relating to potential claims that belong, not to [Appellant], but to the estates and to the Trusts created under the confirmed Plan." (B.D.I. 1996.) On the same date, the Bankruptcy Court entered an order denying the Sanctions Motion (the "Sanctions Order," and together with the Turnover Order, the "Denial Orders"), on the bases that the Bankruptcy Court had "previously approved a comprehensive settlement between the Trusts and [GT] by order dated February 2, 2012 [Docket No. 1974]" and that "the predicate for the [Sanctions Motion] rests upon claims that have been settled or released by the confirmed Plan or by the above-referenced Order." (B.D.I. 1997.) Based on this ruling, Appellees took the position that the Discovery Requests had been rendered moot in light of the Denial Orders. (*See* B.D.I. 2087, 10/3/12 Hr'g. Tr. at 84:14-22.)

On March 6, 2012, Appellant filed a Motion for a Continuance of the Hearing to Sanction Mary [sic] Mitchell (B.D.I. 2004) (the "Motion for Continuance"). On March 6, 2012, the Bankruptcy Court entered an order denying the Motion for Continuance (B.D.I. 2000) (the "Continuance Denial Order") because there was "no legal basis upon which [Appellant] may assert standing to seek the relief sought in the [Sanctions Motion]" and because the Court previously denied the relief requested in the Sanctions Motion due to Appellant's lack of standing, among other things.

On March 8, 2012, Appellant filed the Reconsideration Motion. (B.D.I. 2001.) Through the Reconsideration Motion, Appellant asked the Bankruptcy Court to vacate the Sanctions Order,

the Turnover Order, and the Continuance Denial Order. In other words, Appellant sought reconsideration of the Bankruptcy Court's findings that he had no standing to seek sanctions against the Appellees and that the imposition of sanctions against the Appellees was not warranted. On April 11, 2012, and October 3, 2012, the Bankruptcy Court held hearings on the Reconsideration Motion. At the April 11, 2012 hearing on the Reconsideration Motion, Appellant stated that he "is not seeking any relief from the estate and is not asserting any cause of action from Nancy Mitchell's and GT's pre-petition conduct. The movant is only asserting causes of action related to GT's and Nancy Mitchell's post-petition misconduct as it applied to the movant." (B.D.I. 2054, 4/11/2012 Hr'g. Tr. at 42:5-9.) The Bankruptcy Court took the matter under advisement and, on December 7, 2012, entered the Reconsideration Order which denied all relief sought in the Reconsideration Motion. (B.D.I. 2107.) Rather than appeal the Reconsideration Order at this time, Appellant filed a series of motions seeking to alter or amend the Reconsideration Order.[7]

On January 29, 2013, Appellant filed a Notice of Appeal with respect to the Reconsideration Order. (D.I. 1.) The Notice of Appeal was filed one day after the statutory deadline, and Appellee's motion to dismiss the Appeal as untimely (D.I. 6) was granted on January 12, 2015. (See D.I. 30.) The order dismissing the appeal was vacated by order of the Court of Appeals for the Third Circuit dated June 26, 2015. (See D.I. 34.)

---

[7] On December 21, 2012, Appellant filed his first and second motions to alter or amend the Reconsideration Order (the "First and Second Motions to Alter or Amend"). (B.D.I. 2108, 2109.) Appellant then filed a third motion to alter or amend the Reconsideration Denial on January 9, 2013 (the "Third Motion to Alter or Amend"). (B.D.I. 2111.) The Bankruptcy Court entered an order on January 14, 2013 denying the First, Second and Third Motions to Alter or Amend (the "Amendment Denial Order"). (B.D.I. 2114.) The deadline to appeal the Amendment Denial Order was January 25, 2013. On January 15, 2013, Appellant filed a fourth and untimely motion to alter or amend the Reconsideration Denial (the "Fourth Motion to Alter or Amend"). (B.D.I. 2117.) The Fourth Motion to Alter or Amend was filed twenty-five days after the deadline to do so. (See id.) The following day, January 16, 2013, the Bankruptcy Court entered an order denying the Fourth Motion to Alter or Amend (the "Second Amendment Denial Order"). (B.D.I. 2119.)

### E. **The Shareholder Settlement**

Following the filing of the Appeal, on or about October 2, 2013, the Trustee entered into a settlement ("Shareholder Settlement") with certain former shareholders, including Appellant ("Settling Shareholders") to eliminate ongoing litigation expenses and to settle pending litigation. The Shareholder Settlement was not presented to the Bankruptcy Court for approval or disclosed to other shareholders because it was a post-confirmation settlement within the authority of the Trustee. *See Syntax-Brillian*, 551 B.R. at 158-59. The Trustee advised the Court that the confidential settlement was reached in order to bring peace for the Liquidation Trust and stop the burn of legal fees associated with dealing with the litigants. *See id.* at 159. The Shareholder Settlement, *inter alia*, provided for a $120,000 settlement payment to the Settling Shareholders, including a substantial payment to Appellant. In return, the Settling Shareholders agreed to a complete release of the Estate Parties[8] from all claims and causes of action concerning, arising from, or related to the Debtors, the Chapter 11 cases, the Plan, the Confirmation Order, the Liquidating Trust, its assets, or the Trustee. On October 24, 2013, in accordance with the terms of the Shareholder Settlement, the Joint Notice of Withdrawal of Certain Shareholder Claims and Pleadings (B.D.I. 2245) ("Notice of Withdrawal"), signed by Appellant, among others, was filed with the Bankruptcy Court. Pursuant to the Notice of Withdrawal, the Settling Shareholders (including Appellant) acknowledged and agreed that:

> . . . all pending motions, objections, complaints, responses and other pleadings filed by the Shareholders in the Chapter 11 Cases (collectively, the "Pleadings") against the Estate Parties are hereby withdrawn with prejudice . . . provided,

---

[8] The Estate Parties are defined in the Shareholder Settlement as "collectively and individually, the following persons and entities: (i) the Liquidation Trust, (ii) the Lender Trust, (iii) the Trustee, (iv) Pepper Hamilton LLP, (v) Development Specialists, Inc., (vi) Diamond McCarthy LLP, (vii) the Creditor Representatives (as such term is defined in the Liquidation Trust Agreement), in their capacities as such, (viii) all other professionals, consultants, advisors and employees retained by the Liquidation Trust, the Lender Trust or the Trustee, and (ix) each of the respective past, present and future affiliates, predecessors, successors, assigns, shareholders, officers, directors, partners, employees, members, agents, heirs, executors, administrators, attorneys, consultants, advisors, and other representatives of the persons and entities listed in (i) through (viii) of this paragraph."

however, that nothing in this Notice shall release, waive or affect in any way any Pleading filed by Ahmed Amr in the Chapter 11 Cases against Greenberg Traurig LLP or Nancy A. Mitchell solely to the extent related to the lawsuit styled *Ahmed Amr v. Greenberg Traurig, LLP, et al.,* currently pending before the United States District Court for the District of Delaware, Case No. 13-337-GMS.

The Settling Shareholders (including Appellant) further acknowledged and agreed that:

> Neither they, nor any person or entity affiliated with or controlled by any of them, or on whose behalf any of them are acting or may act pursuant to any agreement, arrangement or applicable law, shall be (i) parties-in-interest in the Chapter 11 Cases or appear at any hearing in the Chapter 11 Cases; (ii) have any interest of any kind, whether contingent, beneficial or otherwise, in the Liquidation Trust; or (iii) hereinafter acquire directly or indirectly any interest of any kind, whether contingent, beneficial or otherwise, in the Liquidating Trust. The Shareholders shall not advise, encourage or otherwise assist any person or entity in filing or asserting any claim, right, demand, pleading or allegation of any kind in the Chapter 11 Cases or against any of the Estate Parties.

(B.D.I. 2245.)

Notwithstanding his entry into the Shareholder Settlement and receipt of settlement funds thereunder, the record reflects that Appellant has continued to file motions, objections, and appear in the Chapter 11 cases. For example, on May 16, 2016, Appellant filed the Motion of Ahmed Amr to Proceed Qui Tam under the False Claims Act. (*See* B.D.I. 2329.) On June 16, 2016, the Bankruptcy Court held a hearing on that motion and determined that Appellant was subject to the Shareholder Settlement and Notice of Withdrawal and thus had no standing to appear or be heard on any matter in the Chapter 11 cases. (*See* B.D.I. 2406 at 4.) Appellant argued that he had withdrawn from the Shareholder Settlement. (*See id.*) The Bankruptcy Court advised Appellant that if he believed there were grounds for disputing that he is bound by the Shareholder Settlement, such arguments must be set forth in a separate motion filed with the Bankruptcy Court so that parties will have the opportunity to respond. (*Id.* at 4, n.9.) As of the date hereof, the docket reflects that Appellant has filed no such motion. On August 31, 2016, in response to an additional pleading made by Appellant, the Bankruptcy Court entered an order reiterating that, based on the

11

Shareholder Settlement and the Notice of Withdrawal, Appellant "does not have standing to appear and be heard in any matter in this chapter 11 case." (B.D.I. 2423.)

## III.    JURISDICTION AND STANDARD OF REVIEW

The court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). An "order denying reconsideration is final if the underlying order is final and together the orders end the litigation on the merits." *United States v. Monahan (In re Monahan)*, 497 B.R. 642, 646 (1st Cir. B.A.P. 2013) (internal citation omitted). Because the Denial Orders meet these criteria, the court has jurisdiction over the Appeal of the Reconsideration Order. *See id.*

## IV.    DISCUSSION

### A. Motion for Summary Judgment Affirming Appellant's Standing to Sanction Nancy Mitchell and Greenberg Traurig

On May 14, 2014, prior to any merits briefing on the Appeal, Appellant filed a motion seeking "summary judgment affirming Appellant's standing to sanction Nancy Mitchell and [GT]" ("Standing Motion"). (D.I. 23.) The Standing Motion states that "the Bankruptcy Court has denied standing to sanction Nancy Mitchell and [GT] for failure to produce discovery and for lack of candor before the Court." (*See id.* at 12.) Appellant argues generally that no party challenged his participation throughout the Chapter 11 cases on the basis of standing; he has a valid claim against the estate and a pecuniary interest in the outcome of the bankruptcy proceedings; and there are "no legal grounds for denying [A]ppellant standing." (D.I. 23 at 5-13). Appellees do not address the merits of the Standing Motion because they argue it is procedurally improper. Appellees argue that a motion for summary judgment is a method by which trial courts dispose of legal issues, and there is no applicable rule of appellate procedure that contemplates summary judgment. (*See* D.I. 24 at 2.)

12

Appellees are correct that summary judgment in the context of an appeal is a legal fiction and nullity. Notwithstanding, the court is mindful that "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Setting aside the procedural defect, however, it is unclear what challenge to standing this motion seeks to address or prevent – Appellant's standing to object and be heard in the Chapter 11 Cases generally (bankruptcy standing),[9] Appellant's standing to appeal the Reconsideration Order ("appellate standing"), [10] or Appellant's standing to pursue any alleged estate Causes of Action – Causes of Action upon which the relief sought in the Sanctions Motion and Turnover Motion was predicated, and which, if any, the Bankruptcy Court has held were settled by or belong to the Liquidation Trust.

Appellant has clearly waived his bankruptcy standing by virtue of his entry into the Shareholder Settlement and Notice of Withdrawal. (*See* B.D.I. 2245, 2423). The court is not aware of any challenge to Appellant's appellate standing – the Shareholder Settlement specifically carved out this Appeal, and the Reconsideration Order itself acknowledges that "the order approving the [Shareholder Settlement] provided that the approval was without prejudice to

---

[9] Bankruptcy standing is governed by both Article III of the Constitution and the Bankruptcy Code. The Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III. "[A]n essential and unchanging part of the case-or-controversy requirement" is the doctrine of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To have standing under Article III, "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores,* 557 U.S. 433, 445 (2009). The right to be heard in a bankruptcy case is governed by 11 U.S.C. § 1109, which provides: "A party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter." The Third Circuit has held that the party in interest standard "must be construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard." *In re Global Indus. Techs., Inc.,* 645 F.3d 201, 211 (3d Cir. 2011) (*en banc*) (internal quotations omitted). Indeed, the Third Circuit has noted that "[p]ersuasive authority indicates that Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Id.*

[10] Appellate standing, on the other hand, is more exacting than constitutional standing. *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 215 (3d Cir. 2004). "Standing to appeal in a bankruptcy case is limited to persons aggrieved by an order of the bankruptcy court." *Id.* at 214 (internal quotations omitted). The "persons aggrieved" test is a prudential standing requirement. *See id.* To have standing to appeal an order of the bankruptcy court under the persons aggrieved standard, a party must show that the order "diminishes [its] property, increases [its] burdens, or impairs [its] rights." *Id.* (internal quotations omitted).

[Appellant's] rights and claims, if any, against GT." (B.D.I. 2107 at 5.) Rather, the arguments raised in Appellant's Standing Motion appear to relate to Appellant's ability to pursue estate Causes of Action and seek sanctions against, or recover damages from, GT. The Bankruptcy Court denied the Turnover Motion at least partly on the basis that its purpose was "to develop facts relating to potential claims that belong, not to [Appellant], but to the estates and to the Trusts created under the confirmed Plan." (B.D.I. 1996.) Appellant moved for the same or similar relief on several prior occasions in the Chapter 11 cases, and at least one prior order denied relief on the basis that "Appellant lacked standing to pursue claims on behalf of the estates." (*See* B.D.I. 1916.) The Bankruptcy Court also denied the Motion for Sanctions on the basis that its predicate rests on claims that have been settled or released by the confirmed Plan or by the order approving a settlement between the Trusts and GT. (B.D.I. 1997.) The Continuance Denial Order found there was "no legal basis upon which [Appellant] may assert standing to seek the relief sought in the [Sanctions Motion]." (B.D.I. 2000.)

Although not entirely clear, the Standing Motion appears to assert arguments that go directly to the merits of the Appeal and Appellant's arguments that the Bankruptcy Court (i) erred in denying the Turnover Motion based on Appellant's lack of standing to pursue discovery in connection with estate Causes of Action belonging to the Trusts, and (ii) erred in denying the Sanctions Motion based on Appellant's lack of standing to pursue claims that have been released by the Plan or settled by the Liquidation Trust.[11]  Any consideration of these arguments in the context of stand-alone motion is inappropriate. Standing is central to the arguments Appellant raises on Appeal, and this issue will be considered by the court only in connection with the court's

---

[11] The court expresses no agreement with such a characterization of the Bankruptcy Court's prior rulings.

ruling on the merits. For the foregoing reasons, the Standing Motion will be denied as procedurally improper.

### B. Motion for an Emergency Injunction Directing the Secret Service to Seize and Confiscate Forged Documents Currently in the Custody of the Liquidation Trustee

On September 14, 2015, Appellant filed this motion ("Seizure Motion"), which appears to seek relief in the form of a mandatory preliminary injunction directing the United States Secret Service and/or the Federal Bureau of Investigation to seize "forged shipping documents, invoices, and purchase orders" that were allegedly used by the Debtors' officers and directors to inflate and misrepresent the Debtors' pre-petition accounts receivables by $400 million and perpetrate a fraud on Debtors' shareholders. A party seeking a preliminary injunction must ultimately demonstrate: "(1) the reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendent lite damages if relief is not granted." *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP,* 528 F.3d 176, 179 (3d Cir. 2008).

Appellant states that the Liquidation Trustee "claims exclusive possession of these forged documents under the terms of the Chapter 11 plan" and, despite Appellant's attempts to convince the Liquidation Trustee to turn them over to the Secret Service and/or FBI, the Liquidation Trustee has failed to report them to the proper law enforcement. (*Id.* at 2). Appellant argues that no one has been charged with forgery because the forged documents have not been seized and confiscated from the Liquidation Trustee who has had custody of these forged documents for six years." (*Id.* at 3.) Appellant alleges that "the Debtors and their counsel, [GT], and the Liquidation Trustee, have engaged in spoliation of evidence by failing to make certain that these forged documents are seized, confiscated and entered into the evidence of the Chapter 11 proceedings." (*Id.* at 3.) Appellant argues that "[t]he spoliation of evidence by the Liquidation Trustee and Appellees is ongoing and must cease." (*Id.* at 2.)

15

Appellees assert that the Seizure Motion is entirely without merit and deny that Appellees engaged in forgery or spoliation. (D.I. 39 at 2, n.1.) Appellees argue that the Seizure Motion is only properly directed to the Liquidating Trustee, who has custody of the documents, in the context of the Chapter 11 bankruptcy proceedings. Appellees argue that the Seizure Motion is improperly filed in this Appeal, as the Liquidation Trustee is not a party to these proceedings, "in which the sole issue is whether the Bankruptcy Court erred in entering the Reconsideration Order." (*Id.* at 2.)

The court agrees. Any denial of injunctive relief by the Bankruptcy Court, if such relief was sought by Appellant, is not part of the order on Appeal. Appellant cites no law or precedent upon which the court might enter an injunction directing the Secret Service or the FBI, who are not parties to this Appeal, to seize documents in the custody of the Liquidation Trustee, who is also not a party to this Appeal. Appellant argues that the court may order such relief because the court has "legal custody" of the documents by virtue of his pending Appeal. Specifically, Appellant argues that "the issue of the forgeries arises out of the underlying Chapter 11 proceedings" and "the forged documents are now in the legal custody of the District Court and [have] been in the legal custody of the District Court since Appellant filed the instant appeal three years [ago]." (D.I. 38 at 5.) Appellant argues that, as custodian of these records, "the District Court has the obligation to assure that they are preserved and entered into evidence and made available for causes of action in this and other jurisdiction[s]." (*Id.*)

The Confirmation Order approving the Plan was entered on March 11, 2009, was not appealed, and is a final order. (*See* B.D.I. 1529.) Pursuant to the Plan, the Debtors' assets, including all books and records, were transferred to the Liquidation Trust on the Effective Date. The Liquidation Trustee has taken possession of the Debtors' books and records – including such

16

documents that may be in his possession that evidence fraudulent prepetition conduct. It is his responsibility to preserve these materials, pending appropriate direction from the Bankruptcy Court, in order to administer the Liquidation Trust's assets and prosecute necessary litigation. The court does not have legal custody over the books and records of the Debtors by virtue of this or any appeal. Construing the Seizure Motion liberally, the court finds it is not properly directed to any party in this Appeal, and the court is unaware of any basis on which it could grant such relief. For the foregoing reasons, the Seizure Motion will be denied.

## C. Motions to Intervene Due to Bankruptcy Fraud, Spoliation of Evidence, and Concealment of Forgery

In January 2016, three years after the filing of this Appeal, eight former shareholders (together, "Movants") filed motions to intervene (D.I. 47, 48, 49, 51, 52, 53, 54, 55) ("Intervention Motions"). The Intervention Motions are substantially similar and include lengthy challenges to the integrity of the bankruptcy proceedings. Movants argue that intervention in the Appeal is necessary to protect each Movant's rights to due process, restitution as victims of bankruptcy fraud, and to prevent the spoliation of evidence and continued concealment of forgery. Movants seek to intervene to ensure that this court grants relief preventing spoliation of evidence, ordering the preservation of the alleged forged documents in the custody of the Liquidation Trustee, and referring the alleged forged documents to the Attorney General, FBI, the Secret Service, and the Bankruptcy Fraud Task Force, to have those documents "entered into evidence."

Appellees argue, as an initial matter, that the Federal Rules of Appellate Procedure provide no authorization for non-party intervention at the appellate level, except in the context of appellate review of an agency order. Fed. R. App. P. 15. The court agrees. Appellant argues that, even at the less stringent trial level, the Federal Rules of Civil Procedure set forth only narrow

17

circumstances for intervention, which Movants do not meet.[12] Attempts to intervene at the appellate level are strongly disfavored, and the Third Circuit has recognized that intervention on appeal should only be granted "in exceptional circumstances for imperative reasons." *In re Grand Jury Investigation*, 587 F.2d 598, 601 (3d Cir. 1978). This is because appellate intervention is "unduly disruptive and places an unfair burden on the parties to the appeal." *Amalgamated Transit Union Intern. AFL-CIO v. Donovan*, 771 F.2d 1551, 1553 (D.C. Cir. 1985). The Third Circuit has noted that where there is a long standing history of litigation in a case, subjecting the parties to further litigation through intervention at the appellate level would be highly prejudicial. *See generally, United States v. Territory of V.I.*, 748 F.3d 514, 525 (3d Cir. 2014).

To be entitled to intervention as of right, Movants must establish each of the following elements: (i) a timely application for leave to intervene, (ii) a sufficient interest in the underlying litigation, (iii) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (iv) that the existing parties to the action do not adequately represent the proposed intervenor's interests. Fed. R. Civ. P. 24(a); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). Movants have not satisfied the above elements.

Regarding timeliness, the court considers (i) the stage of the proceeding; (ii) the prejudice that delay may cause the parties; and (iii) the reason for the delay. *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). Delay is measured "from the point at which the applicant knew, or should have known, of the risk to its rights." *Id.* at 370 (internal quotations omitted). Here, the Chapter 11 cases were commenced on July 8, 2008, seven

---

[12] Fed. R. Civ. P. 24(a) permits intervention as of right only where a federal statute grants an unconditional right to intervene or where the movant claims an interest relating to the property or transaction that is the subject of the pending action and disposal of the action may as a practical matter impair the movant's ability to protect its interest unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(b) allows permissive intervention only where a movant is given a conditional right to intervene by a federal statute or shares with the main action a common question of law or fact. A motion to intervene at the trial level (which did not occur in the instant case) must also be timely.

years prior to the Intervention Motions.  The Intervention Motions were filed three years after the

Reconsideration Order and the Appeal thereof (D.I. 1) and, notably, after the Appellees had filed

their answering brief on the merits of the Appeal.  (*See* D.I. 45 (filed December 14, 2015).)  To

require Appellees to respond to numerous intervenors, who raise a myriad of complaints and

grievances against the non-party Debtors, would be disruptive, burdensome, costly, and highly

prejudicial to Appellees.  Regarding the reason for the delay, Movants allege a lack of due process.

However, the record reflects that each of the Movants received notices during the Chapter 11 cases,

and any risk to shareholders' rights was made apparent by virtue of the Chapter 11 filing itself.

Movants argue that while they may have received notice of the bankruptcy filing, there was nothing

in those notices explaining the alleged massive fraud.  The court finds the record replete with

references to the alleged fraud perpetrated by the Debtors' former management and suppliers,

including the Disclosure Statement, filed on March 12, 2009, which summarized ongoing litigation

and the estates' potential Causes of Action against various parties including the Debtors' former

officers and directors.  At this point, the risks to Movants' rights were known or should have been

known, and a motion to intervene filed 6 years later, in the appeal of another former shareholder,

is untimely.

Regarding a sufficient interest in the underlying litigation, Movants must demonstrate an

interest relating to the property or transaction which is the subject of the action.  *See Liberty Mut.*,

419 F.3d at 220 (internal citations and quotations omitted).  "An intervenor's interest must be one

that is significantly protectable.  This means that the interest must be a legal interest as

distinguished from interests of a general and indefinite character."  *Id.* at 220 (internal citations

and quotations omitted).  Movants must also demonstrate that there is a "tangible threat" to their

interests to have the right to intervene.  *See id.*  Here, it is unclear which of Movants' legal interests

are at issue or threatened by the disposition of the Appeal.  The Intervention Motions assert myriad rights and claims, challenging the overall integrity of the bankruptcy proceedings and contesting much of the relief granted in the Chapter 11 proceedings years ago.  Movants do not articulate how a determination of Appellant's right to compel production of documents or Appellant's request for sanctions against GT in any way implicates or threatens Movants' rights to due process and to seek restitution for alleged bankruptcy fraud.

Regarding the final factor, Movants must show that existing parties to the Appeal do not adequately represent their interests.  Movants' arguments focus on Appellant's alleged failure to represent them in the Chapter 11 cases, generally, citing Appellant's entry into the Shareholder Settlement and receipt of settlement funds in which they did not have the opportunity to share. Movants do not argue that Appellant fails to represent their interests in connection with turnover of documents and the sanctioning of Debtors' former counsel.  Again, it is unclear what legal interests Movants seek to protect in the Appeal, but Appellant's Appeal of the Reconsideration Order, seeking document production and sanctions against GT, is consistent with the many rights and claims asserted in the Intervention Motions.

Movants are not entitled to permissive intervention either.  Federal Rule of Civil Procedure 24(b) permits intervention by a non-party who "[o]n timely motion . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  For the reasons set forth above, the Intervention Motions are not timely, and Movants have failed to establish that they are asserting claims or defenses that share common questions of law or fact that are the subject of this Appeal.  Overall, the Intervention Motions reflect that Movants seek to intervene in this Appeal in an attempt to resurrect issues decided in the Chapter 11 cases years ago. However, this Appeal concerns very narrow issues – the denial of requests for document

production and the denial of requests for sanctions against Appellees related to that document production. As Appellees note, the scope of the claims or rights that Movants assert to justify their intervention in this Appeal is unavoidably restricted by the scope of the issues properly on appeal.

The Intervention Motions are untimely, are based on rights to relief outside the scope of this Appeal, and Movants' rights are not implicated or threatened by the outcome of the Appeal. Movants have failed to establish circumstances or reasons that demonstrate that intervention is necessary. For the above reasons, the Intervention Motions must be denied.

### D. Motion to Impeach Evidence

Appellant's motion (D.I. 70) ("Motion to Impeach"), filed on May 16, 2016, seeks to "impeach" certain numbers listed on the Debtors' chapter 11 petitions (B.D.I. 1), the affidavit entered into evidence at the first day hearing (B.D.I. 3) ("First Day Affidavit"), and proofs of claim filed by several secured and unsecured creditors who are not parties to this Appeal. (*See* D.I. 70 at 5.) Construing this motion liberally, it appears that Appellant wishes to strike these documents as evidence in the Appeal. However, none of the documents that Appellant seeks to strike are part of the designated record of this Appeal. (*See* D.I. 2, 3, 20.) The Motion to Impeach is therefore moot.

The Motion to Impeach includes a reference to Federal Rule of Civil Procedure 60, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024, and also attaches a copy of Rule 60 as an exhibit. The Motion to Impeach does not specify the order or judgment from which Appellant may seek relief or reconsideration. Construing this pleading liberally, the court concludes that Appellant's Motion to Impeach likely seeks reconsideration of some prior ruling admitting the First Day Affidavit and other documents. Indeed, on May 11, 2016, several days prior to the filing of the Motion to Impeach, the Bankruptcy Court entered an

21

order denying a request for relief from the order admitting the First Day Affidavit on the basis of newly discovered evidence.[13] *See Syntax-Brillian*, 551 B.R. at 162.

Any such motion for reconsideration of a Bankruptcy Court ruling was required to be filed with the Bankruptcy Court. *See In re Lower Bucks Hosp.*, 571 Fed App'x 139, 143 (3d Cir. 2014) ("Federal Rule of Bankruptcy Procedure 9024 incorporates Rule 60(b) of the Federal Rules of Civil Procedure and allows *bankruptcy courts*, like district courts, *to reconsider earlier orders* in the case of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or any other reason that justifies relief") (emphasis added) (internal citations and quotations omitted). All Rule 60(b) motions also must be filed "within a reasonable time." Even if a 60(b) motion had been timely filed in the proper court, the Motion to Impeach fails to meet the rigorous standards necessary to obtain relief under Rule 60(b). A Rule 60(b) motion should be granted only where extraordinary justifying circumstances are present. *See Pilsco v. Union R.R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967). A movant "bears a heavy burden" in showing that relief is appropriate under Rule 60. *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). Appellant does not state which subsection of Rule 60 he attempts to invoke, or what evidence satisfies the prescribed requirements thereunder. Appellant simply states: "The impeachment of fabricated numbers on the Chapter 11

---

[13] Movant contended that a memorandum opinion entered by the Bankruptcy Court in an adversary proceeding between the Liquidation Trust and Preferred Bank ("Rule 12(b) Decision") constituted "newly discovered evidence" justifying relief under Rule 60(b). In the Rule 12(b) Decision, the Bankruptcy Court held that the Liquidation Trust sufficiently pled a cause of action under 11 U.S.C. §§ 548(a)(1)(A) and 6 Del. Code § 1304(a)(1) alleging actual fraud to survive a motion to dismiss. *See SB Liquidation Trust v. Preferred Bank*, No. 10-51389 (BLS), 2016 WL 1165634, at *5-6 (Bankr. D. Del. Feb. 8, 2016). Movant argued that, in the Rule 12(b) Decision, the Bankruptcy Court conclusively determined that Debtors engaged in fraudulent conduct. In denying the Rule 60(b) motion, the Bankruptcy Court explained that movant misunderstood the Rule 12(b) Decision. *See Syntax-Brillian*, 551 B.R. at 161. When the Bankruptcy Court stated in the 12(b)(6) Decision that "it accept[ed] as true" the allegations made in the complaint, the Bankruptcy Court did not mean that the Liquidation Trustee had conclusively proven those allegations. Rather, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept well-pleaded allegations as true. As the Rule 12(b) Decision was not newly discovered evidence, the Rule 60(b) request for relief from the order admitting the First Day Affidavit was denied. *Id.*

petition is sufficient to state a claim based on Rule 60(b) as grounds for Relief from a judgment or Order." (D.I. 70 at 4.)  This conclusory statement is not sufficient to carry Appellant's burden.[14]

The documents that Appellant seeks to "impeach" or strike as evidence are not part of the designated record of this Appeal, so the Motion to Impeach is moot.  To the extent that Appellant intended the Motion to Impeach to be a motion for relief from a judgment or order under Rule 60(b), the request is procedurally improper and does not meet the substantive requirements for relief.  The Motion to Impeach must be denied.

## V.    CONCLUSION

For the foregoing reasons, the court will DENY the Standing Motion, the Seizure Motion, the Intervention Motions, and the Motion to Impeach.

September 29, 2016

UNITED STATES DISTRICT JUDGE

---

[14] Even if Appellant could meet the standards necessary to obtain relief under Rule 60(b), striking the First Day Affidavit would not provide Appellant with the monetary recovery he seeks.  As the Bankruptcy Court stated:

> Movant and the Joinder Parties appear to be proceeding on a flawed premise: as best as the Court can discern, it is their expectation that if the Court strikes the First Day Affidavit, then everything that has occurred in this chapter 11 case over the past eight years will be undone.  In fact, the docket reflects that the Plan was confirmed and went effective nearly seven years ago, claims have been administered, and the Trustee has made significant distributions on those claims.  Striking or vacating the First Day Affidavit, even if ordered by this Court, will not affect or unwind these steps and transactions.

*Syntax-Brillian*, 551 B.R. at 160.